JONES, Justice:
This case comes from the Chancery Court of Jackson County. It was filed by eight individuals of Jackson County, Mississippi, as trustees of Gabriel Cemetery Association, which association was located and operated in the City of Pascagoula. The bill was to cancel cloud on title against Defendants, Phil Allen Kuhn and his mother, Mrs. Odette Kuhn. After a hearing, a decree was entered in favor of the Association and from this decree Phil Allen Kuhn appeals. We affirm.
The Defendant, Mrs. Odette Kuhn, asked that the case be dismissed as to her because she had no title in the property, having theretofore conveyed her interest to her son, Phil Allen Kuhn. The case was therefore dismissed as to her, and the son, Phil Allen Kuhn, remained as the sole defendant.
Appellees, as trustees of the Association, claimed to be the owners of a certain plat of land specifically described in the bill of complaint and platted on an exhibit.
The plat seems not tO' have been filed with the bill of complaint; but after a special demurrer raised the question, same, together with other exhibits, was filed in the case, and the special demurrer was overruled.
The trustees deraigned title to said property by showing a patent from the United States of America to one Antoine Krebs dated April 8, 1947, and recorded in the Land Deed Records of Jackson County.
It then alleged that by mesne conveyances from the patentee the legal and equitable title became vested in F. H. Lewis by deed dated 1903 and recorded in the Land Deed Records of Jackson County. Various deeds were set out in the deraignment, including a deed from the City of Pasca-goula made in 1948 attempting to convey to the trustees of said Association certain lands which are merely described as “Lot in Vincent Baptiste strip in Eugenia Baptiste tract (600 feet on West side Canal Street, Claim Section 8, Township 8, Range 6,” which was said to be in the City of Pascagoula, Jackson County, Mississippi.
The complainants charged that the Association had been in open, adverse, notorious, hostile, peaceable, exclusive, continuous, visible, actual possession, and had been the recognized owner of said lands for more than ten years.
Defendant filed a general demurrer to the bill, which was overruled. He then filed a motion to make the bill more specific, particularly with reference to the acts of adverse possession.
The bill of particulars was filed setting up the facts on which a claim of adverse possession was based.
*636 The answer was a general denial of the allegations of the bill of complaint.
Testimony was heard by the chancellor; and afterward, he held that title to the property had been proven to his satisfaction by adverse possession and entered a decree confirming the title of appellee to the larger part of the property to which appellee had sought confirmation. Some part on the south end thereof was omitted from the description of the lands confirmed by the court. There is no cross-appeal, however.
The assignment of error asserts the court erred in overruling the general demurrer to the bill. We think there is no merit in this.
The second assignment alleges that the court erred in holding that the deed from the city heretofore mentioned amounted to color of title. We think this deed at least showed that the Association entered into possession of the property under a claim of right, even conceding there was not such a description in .the deed as would constitute color of title. Further the court held that the entire tract was enclosed and that actual possession of all the land was had by the appellees for more than ten years. The Association did secure a deed later from one of the predecessors in title with a metes and bounds description.
The third assignment of error is that the appellee did not prove its claim by sufficient chain of title. The bill of complaint alleged the property was patented by the United States government. It is true the patent from the United States to Antoine Krebs conveyed to him what was “designated as Section Eight in Township Eight South of Range Six West, containing two hundred and ninety three acres.” Other deeds referred to the property as being a part of the “Vincent Baptiste strip in Eugenia Baptiste tract” and being “Claim Section 8, Township 8 South, Range 6 West.” Copies of plats of the Baptiste claim were introduced in evidence without objection. Also there was no objection to the introduction of the patent from the United States government. Various deeds refer to the land as beginning at a corner of what would be regular Section 14, Township 8 South, Range 6 West had the lands been surveyed into regular sections, and they were also described as situated in the Vincent Baptiste strip in Claim Section 8 of the same township and range.
The plats of the Baptiste division are very dim and weak and are hard to read. We cannot say the chancellor was manifestly wrong in holding the lands had been patented from the United States government. Regardless of color of title, the claim of adverse possession and the proof relative thereto was of actual possession of the entire tract, title to which is confirmed by the final decree.
A question is presented as to- a defective deraignment of title. All that is required of a deraignment of a title based upon adverse possession is a showing of the divestiture of title from the sovereign and, thereafter, adverse possession for the requisite time. Cochran v. Cochran, 221 Miss. 780, 74 So.2d 841 (1954); Smith v. Overstreet, 205 Miss. 488, 38 So.2d 923 (1949); Long v. Stanley, 79 Miss. 298, 30 So. 823 (1901).
On trial of the case the Association introduced witnesses who testified that sometime in the late spring or early summer of 1949, after the acquisition of the deed from the City of Pascagoula in 1948, members of the Association erected a barbed wire fence attached to pine posts and to existing trees around and enclosing the entire property in controversy. At some places the barbed wire was attached to fences already existing on the line. There was no gate provided for said enclosure. Testimony further revealed the property was kept under fence until about 1960, when the members undertook to have a better fence built and were stopped by the mother of the appellant. During this period people were buried upon parts of this land; *637 and timber was cut and sold, the Association receiving payment therefor. It was stated that the Board of Supervisors, or a member thereof, cleared and removed stumps and underbrush from the land for the Association; a right-of-way into the property was procured; and the city hauled truckloads of shell and dirt in and on the low areas of the property. In the light of this testimony, the court held that the Association had established its claim to said lands by adverse possession, confirmed title thereto in the Association, and can-celled deeds held by the appellant. We quote excerpts of the chancellor’s findings:
The property was purchased, as the deed indicates, for cemetery purposes and being purchased for such purposes and used for such it was not necessary to have any activity on it but the stringing of wire around it was sufficient to constitute a flag, and in fact, is sufficient to set up boundary lines for adverse possession purposes and it having been enclosed it was not necessary to have other activity on it.
******
Now as against the claim of the cemetery the only thing that is in the evidence is the negative testimony of these people who say they never saw this fence, this barb wire fence. They say that they knew nothing about the claiming of it by the cemetery; that children played over there and two people put little gardens in the lower end while there were houses adjoining the property during the war years. None of these people are claiming this land adversely to the Cemetery Association, or to any one.
The fact that children played in the oak trees or swung on the limbs and somebody planted a garden over there doesn’t help the position of Kuhn. It is just sort of a negative way of saying that the Cemetery Association wasn’t claiming the land but none of that would be things that would interfere with the use of the cemetery for cemetery purposes. The Cemetery is almost like a park sometimes. Its public and everybody goes into it and around it but that doesn’t mean they are claiming the land.
In view of all the testimony in this case, I hold that the Cemetery Association has proven their claim by sufficient chain of title to give them color of title and by actual enclosing of the property by a wire fence that lasted more than ten years that they are entitled to this property and to have this defendant’s claims removed as a cloud thereon from the point 1000 feet south from the north line of the old cemetery property.
The final decree recites that the chancellor has viewed the property and that the complainant Association “has proven to the satisfaction of the court its title by adverse possession.”
From the record we cannot say that the chancellor was manifestly wrong in his finding.
We do think the final decree should be corrected somewhat. It confirms title merely in the Cemetery Association. Of course, this is an unincorporated association, and the title is in the trustees. We therefore enter an amendment to the final decree, rather than remanding the case for correction by the lower court, by substituting in those places in the final decree where the word “association” or “complainant” is used, the following words: “Alex Ladnier, Mary Hanshaw, Harry Durden, Robert Cook, Edward Wright, Jr., Alberta Martin, Eugene Bostic and Leon Willis, Trustees of Gabriel Cemetery Association, and their successors in office.”
The case is affirmed with this modification of the final decree.
Affirmed.
ETHRIDGE, C. J., and RODGERS, BRADY and PATTERSON, JJ., concur.